### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR INSTAGRAM USER ACCOUNT NAMES: SUPERSMASHCANDY (8427925731); INCSTLUVR69 (11412293143); MSLYTHERIN18 (3597064823); SUBTAMER69 (8357005036); and SUBTAMR69 THAT ARE STORED AT A PREMISES CONTROLLED BY FACEBOOK INC | ) ) Case No.  2:19 mj 521 ) ) ) ) ) Magistrate Judge ) ) ) ) |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Michael A. Harey, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state:

### I.  EDUCATION TRAINING AND EXPERIENCE

1.  I am a Special Agent with the FBI assigned to the Cincinnati Division and I have been a Special Agent since October 2008, having worked on counterterrorism investigations and public corruption investigations as a Special Agent. I am currently assigned to the FBI Child Exploitation Task Force, investigating matters involving the online exploitation of children and child pornography. I have made arrests and have executed search warrants pertaining to these types of investigations.

2.  Prior to becoming a Special Agent with the FBI, I served as a U.S. Border Patrol Agent for approximately five years and a Federal Air Marshall for approximately five years, having begun my federal law enforcement career in February 1998. While performing my duties as a Special Agent, I have participated in various investigations involving computer-related offenses and have executed numerous search warrants, including those involving searches and seizures of computers, digital media, software, and electronically stored information. I have received both formal and informal training in the detection and investigation of computer-related offenses. As part of my duties as a Special Agent, I investigate criminal child exploitation and child pornography violations, including the illegal production, distribution, transmission, receipt,

and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

      3.      As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

II.      **PURPOSE OF THE AFFIDAVIT**

      4.      I make this affidavit in support of an application for a search warrant for information, including the content of communications, associated with certain Instagram usernames and/or ID numbers that are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a social networking company that is owned by Facebook Inc., and is headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require Facebook/Instagram to disclose to the government records and other information in its possession, including the content of communications, pertaining to the subscriber or customer associated with the following Instagram usernames/ID numbers: **SUPERSMASHCANDY (8427925731); INCSTLUVR69 (11412293143); MSLYTHERIN18 (3597064823) ; SUBTAMER69 (8357005036), and SUBTAMR69** (hereinafter "the SUBJECT ACCOUNTS").

      5.      The facts set forth below are based upon my own personal observations, investigative reports, and information provided to me by other law enforcement agents.  I have not included in this affidavit all information known by me relating to the investigation.  I have set forth only the facts believed to be necessary to establish probable cause for a search warrant for the content of the SUBJECT ACCOUNTS.  I have not omitted any information that would tend to negate probable cause.

      6.      The SUBJECT ACCOUNTS to be searched are more particularly described in Attachment A, for the items specified in Attachment B, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, 2252A and 2422(b) – the production, advertising/solicitation for/or, distribution, transmission, receipt, and/or possession of child pornography and the coercion or enticement of a minor(s), including attempts to commit these offenses.  I am requesting authority to search the entire content of the SUBJECT ACCOUNTS, wherein the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

## III.    APPLICABLE STATUTES AND DEFINITIONS

7.    Title 18 United States Code, Section 2251(a) makes it a federal crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or have a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that either the visual depiction will be transported or transmitted via a facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce, or if the visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. Subsection (e) of this provision further prohibits conspiracies or attempts to engage in such acts.

8.    Title 18 United States Code, Section 2251(d)(1)(A) makes it a federal crime for any person to make, print, publish, or cause to be made, printed or published, any notice or advertisement that seeks or offers to receive, exchange, buy, produce, display, distribute or reproduce, any visual depiction involving the use of a minor engaging in sexually explicit conduct, if such person knows or has reason to know that either the notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail; or is such notice or advertisement actually was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail.

9.    Title 18, United States Code, Section 2252, makes it a federal crime for any person to knowingly transport, receive, distribute, possess or access with intent to view any visual depiction of a minor engaging in sexually explicit conduct, if such receipt, transportation, distribution, accessing or possession utilized a means or facility of interstate commerce, or if such visual depiction has been mailed, shipped or transported in or affecting interstate or foreign commerce. This section also prohibits reproduction for distribution of any visual depiction of a minor engaging in sexually explicit conduct, if such reproduction utilizes any means or facility of interstate or foreign commerce, or is in or affecting interstate commerce.

10.    Title 18, United States Code, Section 2252A, makes it a federal crime for any person to knowingly transport, receive or distribute any child pornography using any means or

3

facility of interstate commerce, or any child pornography that has been mailed, or any child pornography that has shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. This section also makes it a federal crime to possess or access with intent to view any material that contains an image of child pornography that has been mailed, shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce by any means, including by computer.

11.     Title 18, United States Code, Section 2422(b), makes it a federal crime for any person to knowingly use a means of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice or coerce, any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person may be charged with a crime.

12.     As it used in 18 U.S.C. §§ 2251 and 2252, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as: actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

13.     As it is used in 18 U.S.C. § 2252A(a)(2), the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as: any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

14.     The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except that for the definition of child pornography contained in § 2256(8)(B), "sexually explicit conduct" also has the meaning contained in § 2256(2)(B): (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the

---

[1] The term child pornography is used throughout this affidavit. All references to this term in this affidavit, and Attachments A and B hereto, include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. § 2252 and child pornography as defined in 18 U.S.C. § 2256(8).

4

same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated; (i) bestiality; (ii) masturbation; (iii) sadistic or masochistic abuse; or (c) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

15.     The term "minor", as used herein, is defined pursuant to Title 18, U.S.C. § 2256(1) as "any person under the age of eighteen years."

16.     The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted."

17.     The term "visual depiction," as used herein, is defined pursuant to Title 18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

18.     The term "computer"[2] is defined in Title 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

## III.     BACKGROUND REGARDING THE INTERNET AND CHILD PORNOGRAPHY

19.     I have both training and experience in the investigation of computer-related crimes. Based on my training, experience and conversations with other officers, I know the following:

20.     The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. Many individual computer users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-

---

[2] The term "computer" is used throughout this affidavit and in Attachments A and B hereto, to refer not only to traditional laptop and desktop computers, but also to internet-capable devices such as cellular phones and tablets. Where the capabilities of these devices differ from that of a traditional computer, they are discussed separately and distinctly.

mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol addresses and other information both in computer data format and in written record format.

21.     Computers and the internet have revolutionized the way in which child pornography is produced, distributed, and utilized. These technologies have also revolutionized the way in which those who have a sexual interest in children interact with each other and with minors. Specifically, the development of computers and the internet have added to the myriad new methods for child pornography collectors to interact with each other and to sexually exploit children. Computers and the internet serve four functions in connection with child pornography and the sexual exploitation of minors. These are production, communication, distribution, and storage.

22.     Internet-based communication structures are ideal for the child pornography collector or those seeking to sexually exploit children. Having both open as well as anonymous communication capability allows the user to locate others of similar inclination and still maintain their anonymity, or to hide their true identity when seeking out minors online. Once contact has been established, it is then possible to send messages and graphic images to other trusted child pornography collectors, or to convince a child to send such images or meet for the purpose of sexual activity. Individuals seeking to engage in such activities can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

23.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Google, Inc., among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of

6

computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.

24.     As is the case with most digital technology, communications by way of computer or mobile devices can be saved or stored on the computer or mobile device used for these purposes.  Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or mobile device, or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  Such information is often maintained indefinitely until overwritten by other data.

25.     A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications.  Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game. Examples of such "apps" include LiveMe, KIK messenger service, Snapchat, Meet24, and Instagram. Links can also be sent via some of these apps, including Instagram, that when clicked on can bring the recipient to a folder or cloud storage account, such as Dropbox or Mega, which may contain significant amounts of child pornography.

## VI.     BACKGROUND REGARDING INSTAGRAM

26.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

27.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com.  Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

28.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

29.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

30.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

31.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

32.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

33.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

34.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

35.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

36.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

37.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

38.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

39.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

40.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

41.     On May 30 and June 24, 2019, Your Affiant served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the SUBJECT ACCOUNTS.

42.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Based on the information above, the computers owned and maintained by Instagram/Facebook are likely to contain all the material described above with respect to the SUBJECT ACCOUNTS, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## V.     <u>INVESTIGATION AND PROBABLE CAUSE</u>

44.     In February 2019, the FBI received information indicating that the user of the Instagram account "SuperSmashCandy" was communicating with a 12-year-old female via Instagram direct messages using language that included strong sexual content. FBI investigation of this Instagram account connected it to the email account subtamer96@gmail.com, and to an individual by the name of Michael Thomas SUTHERIN at an address in Columbus, Ohio. In late April 2019, investigators went to SUTHERIN's listed Columbus, Ohio address where they encountered SUTHERIN, who voluntarily agreed to be interviewed. SUTHERIN admitted that he utilized an email address containing the phrase "Sub Tamer" and the "SuperSmashCandy" Instagram account. SUTHERIN further admitted to possessing child pornography files on his cellular phone and laptop computer, and explained that he obtained such files through various methods. These methods included receiving child pornography via his aforementioned Instagram account and chatting with minor girls on various social media platforms to get the girls to send him pictures or videos of themselves engaged in sexual acts. He admitted that he possessed at least one recording of these encounters on his cell phone or laptop. In a secondary follow-up interview a few days later, SUTEHRIN reiterated that he engaged in such chats with young girls on both Snapchat and Instagram, and admitted that there would probably be some videos of such minor girls engaged in sexual activities on his phone.

45.     SUTHERIN consented to a law enforcement search of his cellular phone and laptop computer for any evidence of the crimes to which he admitted, and signed a consent to search form regarding such search. Upon initial physical review of SUTHERIN's Apple I-Phone 8, and while preparing the phone for a forensic extraction, agents observed the social media application Kik installed on the phone and evidence of child pornography in one of the active Kik chat strings. A search warrant was thereafter obtained for the cellular phone and laptop computer.

46.     Forensic examination of SUTHERIN's laptop computer revealed the presence of approximately 420 videos depicting children engaged in sexually explicit activity. The majority of these child pornography files were found in a folder identified as "MEGAsync Downloads." One of the videos depicted a small child, approximately three to four years old, digitally and orally stimulating the breast and vagina of an adult female. Later in the same video, the adult female digitally and orally stimulated the child's vagina. This particular video was

approximately 39 minutes long.

47. The forensic examination of SUTHERIN's iPhone 8 revealed that numerous social networking applications, including Instagram, Snapchat, and Kik were installed. Within SUTHERIN's Snapchat account, which had a username of Subtamer69, your affiant observed approximately 80 Snapchat Friends; many of them with female names. Based on the nature of the chats that were still in SUTHERIN's phone, SUTHERIN' s admissions that he requested and received child pornography from underage females via Instagram and Snapchat, and the extent of the child pornography found on SUTHERIN's phone and laptop, your affiant had reason to believe that many of these female Snapchat friends were minors. Partial Snapchat conversations that were still present on SUTHERIN's phone revealed that SUTHERIN engaged in sexual conversations with many of the girls who were believed to be minors. For example, in a Snapchat conversation that occurred on or about November 21, 2018, with Snapchat user '███████████████████ SUTHERIN discussed oral sex, anal sex, and exchanging sexually explicit images or audio clips. In a similar conversation on March 27, 2019, with Snapchat user '██████████████ SUTHERN requested pictures of ████ in her bra and underwear, stated that he was "horny from watching hardcore porn," sent ████ a photograph of his erect penis, received a video from ██ that depicted a female pulling up her shirt, showing slight breast development, and asked if ████ minded "if I see in between your legs."

48. In the content of both SUTHERIN's Snapchat and Kik accounts that was present on his phone, Your Affiant also observed evidence of SUTHERIN trading child pornography with other child pornography collectors. There were also several screen captures on the phone, which depicted chats from unknown applications that were believed to be between SUTHERIN and young females.[3] In at least one of these screenshot conversations, SUTHERIN requested that the other user, '████████," send him a "stripping video." '██████████" sent SUTHERIN a video, but Your Affiant was not able to access the video, due to the conversation being a screenshot. However, Your Affiant observed more than 100 videos on SUTHERIN's phone that depicted young female children stripping nude.

---

3 Although most of the screen captures did not contain information showing what application was being used or the user name of both persons engaging in the chat conversation, there is evidence that at least some of the screen captures were of SUTHERIN's conversations. For example, one screen capture depicted a chat with a user identified as ████████, in which the user believed to be SUTHERIN, informs ████████ that his Snapchat account user name is SubTamer69.

49.     As Your Affiant previously indicated, Instagram was also installed on SUTHERIN's phone with SUBTAMR69 being the most recently active account listed. In the profile section of this account, SUTHERIN had posted: "BLOCK DON'T REPORT!!! BDSM/DDLG Lover and Dom. Lost my account so I'm restarting. Guy. Only Dom to girls, not guys. Posts will happen every day. NSFW."[4] Based on this language, Your Affiant believes SUTHERIN had previous Instagram accounts that were shut down due to his illicit behavior. Furthermore, within the SUBTAMR69 Instagram account on SUTHERIN's phone the following accounts were shown to be associated with the SUBTAMR69 account:

- SuperSmashCandy
- Incstlvr69
- Sub_tamer_69
- Myslytherin18
- Subtamer69

50.     Based on the information observed in SUTHERIN's phone, in June of 2019, a search warrant was obtained for the content of SUTHERIN's Snapchat account, Subtamer69. The records provided by Snapchat in response to this search warrant confirmed that several of SUTHERIN's Snapchat friends had informed him that they were minor females; that SUTHERIN had engaged in sexually explicit conversations with these minor females, including requesting and/or sending or receiving sexually explicit/suggestive images; and that SUTHERIN and the minor females also communicated with each another via Instagram, including exchanging sexually explicit videos or images. At times, SUTHERIN commented on videos the victims sent him on Instagram, thus leading your affiant to believe further evidence of SUTHIERIN's enticement of young female children will be discovered on Instagram. The following are excerpts of these communications from Snapchat:

- On November 30, 2019, SUTHERIN asked Snapchat User ▇▇▇▇▇▇▇: "What happened to your accounts?" To which ▇▇▇▇▇▇ replied, "Idfk" (I don't fucking know). Your Affiant believes the reference to accounts indicates both SUTHERIN and ▇▇▇▇▇▇ became acquainted on different social media

---

4 DDLG is an acronym that stands for Daddy Dom/Little Girl. The "Daddy" is the dominant and the "Girl," often identified as a "little" is submissive. BDSM is defined as sexual activity involving such practices as the use of physical restraints, the granting and relinquishing of control, and the infliction of pain. "NSFW" means not safe for work.

platforms, including Snapchat and Instagram.

- On January 21, 2019, ████████ asked SUTHERIN, "Ummm how old are you???" To which SUTHERIN replied, "21", then SUTHERIN asked, "Aren't you like 12?" ████████ responded affirmatively.

- Later on January 21, 2019, SUTHERIN wrote to ████████, "Oh yeah that video you sent. God that really got me horny." Snapchat did not provide the referenced video; therefore, Your Affiant believes the video was either deleted from Snapchat or the video was sent to SUTHERIN on another social media platform such as Instagram. Your Affiant also believes SUTHERIN's comment that the video the 12-year-old child sent made him "horny" indicates that the video was sexual in nature.

- SUTHERIN then asked ████████, "Wait have I ever seen your booty?" ████████ responded, "Yes*". SUTHERIN then asked, "Can I see it again?" and "Actually Daddy NEEDS to see it." Later in the conversation SUTHERIN asked to see ████████ naked, discussed engaging in anal intercourse with her, and stated, "I need to see your tight little asshole."

- Later on the same day ████████ wrote to SUTHERIN, "Dude delete it. New rule no saving photos with my face." SUTHERIN responded, "Sorry." ████████ replied, "Im not mad," and SUTHERIN responded, "Won't happen again." ████████ replied, "Okay." SUTHERIN replied, "won't lie that gave me an instant hard on." Based on the nature of this conversation, it appears that ████████ sent SUTHERIN an image or a video that was sexual in nature, but no picture or video was included in the information provided by Snapchat. As explained above and below, Your Affiant believes this is because the image or video was sent to SUTHERIN via Instagram.

51.    In one particular Snapchat conversation between ████████ and SUTHERIN, SUTHERIN sent a screen capture of what appears to be an Instagram conversation between the user of the ████████ Snapchat account and SUTHERIN. As depicted in the Snapchat excerpt below, the screen capture that SUTHERIN sent depicted a conversation between Instagram user "████████" and an Instagram user believed to be SUTHERIN about sharing nude photos:

14

- SUTHERIN: There's just one thing I'm curious about.
- ▮▮▮▮▮▮▮: Ok
- SUTHERIN: (SUTHERIN sent the following Instagram screen capture)



- ▮▮▮▮▮▮▮: Yes?
- SUTHERIN: I thought you were still my kitten.
- ▮▮▮▮▮▮▮: *coughs*

52.    In a similar conversation found in the Snapchat search warrant return information for SUTHERIN's account, SUTHERIN engaged in repeated sexual conversations with Snapchat user "▮▮▮▮▮▮▮," who on November 19, 2018, wrote to SUTHERIN, "I'll be 15 in april." Throughout their Snapchat conversations, SUTHERIN and ▮▮▮▮▮▮▮ discussed sending illicit videos and images via Instagram. For instance, on November 18, 2018, SUTHERIN wrote, "I can pull up porn vids on Instagram." ▮▮▮▮▮▮▮ replied, "Don't, I don't have my other phone." SUTHERIN asked, "You have two?" ▮▮▮▮▮▮▮, "Yes." SUTHERIN asked, "Why?" ▮▮▮▮▮▮▮ wrote, "Bc my mom likes to look through my phone." SUTHERIN replied,  "Fair enough. Hopefully she doesn't see this stuff." ▮▮▮▮▮▮▮ said, "She won't I long (sic) out every night." SUTHERIN replied, "Good."  The following are excerpts of other Snapchat

conversations between SUTHERIN and ▮▮▮▮▮▮▮

- SUTHERIN: Send it on Instagram.
- ▮▮▮▮▮▮: Okay.
- SUTHERIN: Okay, you want something that'll turn you on?
- ▮▮▮▮▮▮: Unsave that plz.

\*   \*   \*

- SUTHERIN: Wanna see a porn video that shows what I'd do?
- ▮▮▮▮▮▮: Sure. Send it to my insta (Instagram) and un save that from on here. Plz unsave the porn.
- SUTHERIN: Done.

\*   \*   \*

- SUTHERIN: I still wanna see the booty.
- SUTHERIN: Later. If you want.
- ▮▮▮▮▮▮: I don't have my cute panties on and I want it to be a good picture
- SUTHERIN: You naked?
- ▮▮▮▮▮▮: No I have underwear on.
- SUTHERIN: Let me guess. Like 36D?
- ▮▮▮▮▮▮: 34D
- SUTHERIN: I gotta stop taking these screenshots.
- SUTERIN: You really got my motor running.
- ▮▮▮▮▮▮: Howwww?
- SUTHERIN: Dat ass..."
- SUTHERIN: Can I see it again?
- ▮▮▮▮▮▮: It's sending

- On November 14, 2018, SUTHERIN also engaged in a Snapchat conversation with ▮▮▮▮▮▮, in which SUTHERIN convinced the child to anally masturbate and tried to convince her to send him a video of herself engaging in this activity.

53.    SUTHERIN had another communication with a 17-year-old female, who was utilizing the Snapchat username ▮▮▮▮▮▮, on November 7 and 8, 2018. In the communication, SUTHERIN asked for ▮▮▮▮▮▮'s Instagram account and then asked her to add him. He then asked her to send him a picture of her vagina. The following are pertinent excerpts from the communications:

- SUTHERIN: I'm good did you add me from Instagram?
- ▮▮▮▮▮▮: Yeah
- SUTHERIN: What's your username?
- ▮▮▮▮▮▮ (sent a screenshot of her Instagram account profile "▮▮▮▮▮▮▮▮▮")



- ▪ : How old are you
- ▪ SUTHERIN: 20
- ▪ : Ok.
- ▪ SUTHERIN: Too much?
- ▪ : Nope. I'm 17 tho. Hope that's ok
  SUTHERIN: Are you in the tub yet?
- ▪ : Yeah
- ▪ SUTHERIN: Let Daddy see your little pussy.
- ▪ : No
- ▪ SUTHERIN: I'm sorry who am I again?
- ▪ : I'm bout to cry. I'm not just a sex toy

54.    Based on all of the foregoing, Your Affiant believes there is probable cause that the SUBJECT ACCOUNTS contains evidence that SUTHERIN has received and sought out (advertised for) images and videos depicting minor females engaged in sexually explicit activity, and has coerced or enticed minor females to produce and transmit such images and videos via Snapchat and Instagram. Your affiant further believes that SUTHERIN's admissions that he used Snapchat and Instagram to coerce young female children to send him elicit videos, as well as the excerpted Snapchat communications discovered on SUTHERIN's phone and in his Snapchat account, establishes that there is probable cause additional evidence of these offenses will be found within the SUBJECT ACCOUNTS.

17

## VII.    CONCLUSION

55.    Based on the forgoing factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2251, 2252, 2252A and 2422(b) have been committed, and evidence of those violations is located in the content of the SUBJECT ACCOUNTS.  Your affiant respectfully requests that the Court issue a search warrant authorizing the search of the SUBJECT ACCOUNTS described in Attachment A, and the seizure of the items described in Attachment B.

Michael A. Harey
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this ___2___ day of July, 2019.

Chelsey M. Vascura
United States Magistrate Judge
United States District Court, Southern District of Ohio

18